UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-60405-CIV-COHN/SELTZER

MARLENE CARUSO, an individual,

    Plaintiff,

v.

GOLDEN RULE INSURANCE COMPANY,
a foreign corporation,

    Defendant.

_____/

## ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant Golden Rule Insurance Company's Motion for Summary Judgment [DE 42] ("Defendant's Motion") and Plaintiff Marlene Caruso's Motion for Partial Summary Judgment [DE 43] ("Plaintiff's Motion") (collectively "Motions for Summary Judgment"). The Court has carefully considered the Motions for Summary Judgment, the responses and replies thereto, all of the parties' submissions, and is otherwise fully advised in the premises.

I.  BACKGROUND

Plaintiff Marlene Caruso ("Plaintiff") commenced this action against Defendant Golden Rule Insurance Company ("Defendant") on October 18, 2012. Defendant removed the case to this Court on February 21, 2013. See Notice of Removal [DE 1]. Plaintiff applied for health insurance from Defendant in April 2005 and was issued a policy. Defendant's Statement of Material Facts [DE 42][1] ("Defendant's Facts") ¶ 1;

---

[1] Defendant's Statement of Material Facts is located at the beginning of Defendant's Motion.

Plaintiff's Statement of Disputed Material Facts in Opposition to the Motion of Golden Rule Insurance Company for Summary Judgment [DE 49] ("Plaintiff's Response Facts").[2]  Plaintiff designated her fiancé–and her counsel of record in this case–Stephen Rakusin ("Rakusin") as the payor of her premiums under the policy. Defendant's Facts ¶ 2; Plaintiff's Response Facts.  Plaintiff's premium payments were due on a quarterly basis.  Defendant's Facts ¶ 3; Plaintiff's Response Facts.  All premium notices were sent to Rakusin because he was the designated payor on the policy.  Id.  The express terms of Plaintiff's insurance policy provided a 31 day grace period from the premium due date during which premium payments would be accepted without interruption of coverage.  Defendant's Facts ¶ 4; Defendant's Exhibit B. Plaintiff's premium for the policy period of May 13, 2011 through August 13, 2011, was due on or before May 13, 2011.  Defendant's Facts ¶ 5; Plaintiff's Response Facts.  No payment was made before the May 13, 2011 due date.  Defendant's Facts ¶ 6; Plaintiff's Response Facts.  Defendant sent a final notice to Rakusin on June 1, 2011. Defendant's Facts ¶ 7.  Defendant also sent a letter to Plaintiff, dated June 1, 2011, advising her that her payment had not been received.  Defendant's Facts ¶ 8; Plaintiff's Response Facts.

     After the 31 day grace period provided under the policy expired, Melissa Cracchiolo, an employee of the Rakusin Law Firm, called Defendant and asked what had to be done to make the premium payment.  Defendant's Facts ¶ 10.  Defendant contends that Ann Laurent, an employee of Defendant, offered Ms. Cracchiolo an

---

[2] Citations to Plaintiff's Response Facts without a paragraph number reflect that these are facts which Plaintiff does not dispute.

additional 14 day grace period as an administrative courtesy.  Id.  ¶¶ 10-11.  Plaintiff contends, however, that the grace period was actually 45 days and had not expired on June 14, 2011, the date of the phone call.  Plaintiff's Response Facts ¶¶ 10-11.  Plaintiff further contends that a 45 day grace period is routinely provided to all Defendant's customers.  Id. ¶ 11.  In any event, Ms. Laurent stated that Defendant would need to receive the payment in their office by no later than June 27, 2011.  Defendant's Facts ¶ 12.

After the June 14, 2011 phone call, Rakusin waited until June 23, 2011, to sign a premium check.  Defendant's Facts ¶ 14.  Plaintiff contends that the check was mailed that same day.  Defendant's Facts ¶ 16; Plaintiff's Response Facts.  Defendant utilizes Fifth Third Bank to manage its lock box for receipt of premium payments.  Defendant's Facts ¶ 18; Plaintiff's Response Facts.  In June 2011, Fifth Third Bank arranged for mail to be transported from the lock box to its plant seven times a day.  Defendant's Facts ¶ 21; Plaintiff's Response Facts ¶ 21.  According to Defendant, the Rakusin check received a spray date of "6/29."  Defendant's Facts ¶ 31.  Defendant contends that based upon Fifth Third Bank's practice for collecting mail, the check could not have been available for pick up at the post office on June 27, 2011, or earlier.  Id. ¶ 33.  Defendant further contends that it returned the check to Rakusin because the check was not received by June 27, 2011.  Id. ¶ 36.  Plaintiff argues, however, that Karen Maroccki, Rakusin's office administrator, was originally advised that the check was rejected because Defendant could not accept a company check.  Plaintiff Marlene Caruso's Statement of Undisputed Material Facts in Support of Her Motion for Partial Summary Judgment [DE 44] ("Plaintiff's Facts") ¶ 22.  Plaintiff later received a letter

3

from Defendant which advised that it could not accept a check from a business or corporation.  Id. ¶ 25.  Plaintiff also requests that the Court takes judicial notice of certain United States Postal Service regulations to demonstrate that the time for standard mail service from Fort Lauderdale, Florida to Cincinnati, Ohio where the lock box is located, is three days, and thus, the check was timely received.  Id. ¶ 29; Plaintiff Marlene Caruso's Request for Judicial Notice In Support of Marlene Caruso's Motion for Partial Summary Judgment [DE 45] ("Motion for Judicial Notice").

Because Defendant considered Plaintiff's insurance policy lapsed, Plaintiff had to apply for reinstatement of coverage.  Plaintiff's Facts ¶ 26.  On August 1, 2011, Defendant sent Plaintiff a letter informing her that her insurance coverage had been approved for reinstatement.  Id. ¶ 27; Golden Rule Insurance Company's Response to Caruso's Statement of Undisputed Material Facts [DE 47] ("Defendant's Response Facts") ¶ 27.  The reinstated coverage included a restrictive rider for certain medical conditions Plaintiff suffered which Defendant deemed preexisting conditions.  Id.

Plaintiff brings claims against Defendant for a declaratory judgment (Count I), breach of contract (Count II), and breach of the implied covenant of good faith and fair dealing related to the termination and reinstatement of her insurance policy with Defendant.  Compl. ¶¶ 16-32.  Defendant has now moved for summary judgment and Plaintiff has cross-moved for partial summary judgment on the issue of Defendant's liability.

## II.  DISCUSSION

### A. Legal Standard.

The Court may grant summary judgment "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

As long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

**B. Plaintiff's Motion for Judicial Notice.**

Plaintiff has separately filed a Motion for Judicial Notice. See DE 45. In the Motion for Judicial Notice, Plaintiff requests that the Court take judicial notice of certain U.S. Postal Service rules and regulations pursuant to Federal Rule of Evidence 201. Motion for Judicial Notice at 1-2. Plaintiff asks that the Court take judicial notice of these various rules and regulations to establish that the normal delivery time for first class mail between Fort Lauderdale, Florida and Cincinnati, Ohio in June 2011, was three days. Id. at 2. Plaintiff argues that it is appropriate for the Court to take judicial notice of the normal delivery time for mail. Id. at 3. Defendant does not dispute that the Court can take judicial notice of federal regulations if these items constitute adjudicative facts. Defendant argues, however, that the cited U.S. Postal service regulations "are irrelevant to the Court's determination of the issues presented on summary judgment." Golden Rule Insurance Company's Response to Plaintiff's Request for Judicial Notice in Support of Marlene Caruso's Motion for Partial Summary Judgment [DE 46] at 1.

"Judicial notice is a means by which adjudicative facts not seriously open to dispute are established as true without the normal requirement of proof by evidence." Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC, 369 F.3d 1197, 1204 (11th Cir. 2004) (citing Fed. R. Evid. 201(a) and (b)); see also Fed. R. Evid. 201(a) advisory committee's note (explaining that it is proper to take judicial notice of facts with a "high degree of indisputability" that are "outside the area of reasonable controversy"). Defendant cites In re Mora, 199 F.3d 1024 (9th Cir. 1999), for the proposition that it is inappropriate for the Court to take judicial notice of the cited postal service regulations to establish that the premium payment check in question was actually or probably delivered within the time

6

frame contained within the regulations.  Id. at 1-2.  The Court agrees.  See Fed. R. Evid. 201; In re Mora, 199 F.3d at 1026 n.3 ("Although it may be true that the Post Office advertises its attempt to deliver locally designated mail overnight, this court does not take judicial notice that the Post Office delivered the check in question overnight or that the check was probably delivered overnight. Both propositions are disputable and not appropriately admitted as facts under Rule 201.").[3]  While the Court can take judicial notice of the postal service regulations themselves, these regulations do not establish that the premium payment at issue in this case was received at the lock box by the deadline of June 27, 2011.  Thus, Plaintiff's proposed adjudicative fact is insufficient to support a grant of summary judgment in her favor.

### C. Whether Plaintiff May Argue Waiver and Estoppel in Her Motion.

In her motion, Plaintiff makes various arguments that Defendant is estopped from asserting or has waived certain arguments.  See, e.g., Plaintiff's Motion at 4-5; 15-18.  In response, Defendant argues that Plaintiff is barred from arguing estoppel because it was not specifically plead.  Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment [DE 48] ("Defendant's Response") at 7.  The Court disagrees.  Under Florida law, which both parties agree governs this dispute,[4] "equitable estoppel is a defensive doctrine rather than a cause of action." Meyer v. Meyer, 25 So.

---

[3]     By contrast, the cases Plaintiff cites in support of her Motion for Judicial Notice are not availing.  Collins v. Peake, No. 04-1840, 2008 WL 4963351 (Vet. App. Feb. 7, 2008) and Rios v. Mansfield, 21 Vet. App. 481 (Vet. App. 2007) both involved application of the common law mail box rule to the filing of notices of appeal to the Court of Appeals for Veterans Claims.

[4]     See Defendant's Response at 2; Plaintiff's Motion at 3 (applying Florida law); Plaintiff's Facts ¶ 8.

3d 39, 43 (Fla. Dist. Ct. App. 2009) (quoting Agency for Health Care Admin. v. MIED, Inc., 869 So. 2d 13, 20 (Fla. Dist. Ct. App. 2004)). "Florida has long recognized that '[e]quitable estoppel is not designed to aid a litigant in gaining something, but only in preventing a loss.' " Id. Similarly, "it is disputable whether Florida recognizes a cause of action for waiver." Advisor's Capital Invs., Inc. v. Cumberland Cas. & Sur. Co., No. 805CV40423MAP, 2005 WL 3445543, at *1 (M.D. Fla. Dec. 15, 2005). Thus, Plaintiff could not have plead a claim for estoppel or waiver in her Complaint.

Moreover, in her reply, Plaintiff asserts that her waiver and estoppel arguments are premised upon Defendant's affirmative defense that she breached the insurance policy by failing to make timely payment. Marlene Caruso's Reply in Further Support of Plaintiff's Motion for Partial Summary Judgment [DE 60] at 4. Under the Federal Rules of Civil Procedure which govern in this diversity action, if a responsive pleading is not required, all affirmative defenses are deemed to be denied or avoided. Fed. R. Civ. P. 8(b)(6). Here, the Court did not direct, and no party requested, that Plaintiff respond to Defendant's affirmative defenses. See Fed. R. Civ. P. 7(a)(7). Plaintiff is entitled to move for summary judgment on the Defendant's affirmative defenses. Thus, Plaintiff did not waive its right to assert waiver and estoppel in avoidance of Defendant's affirmative defense that the insurance policy had lapsed. See Pike Co., Inc. v. S. Cent. Conn. Reg'l Water Auth., No. 3:08cv1751 (MRK), 2011 WL 1467756, at *6 n.6 (D. Conn. Apr. 18, 2011) (plaintiff did not waive tolling argument asserted in summary judgment motion by failing to raise it in reply to answer because reply is not necessary or proper in federal practice); Thompson v. Walker, No. 09–CV–508–JE, 2010 WL 3952894, at *3 (D. Or. Oct. 7, 2010) (holding that plaintiffs did not waive their right to assert a statute-of-frauds

argument in response to one of defendants' affirmative defenses in their motion for summary judgment).  The Court, therefore, will consider Plaintiff's waiver and estoppel arguments on the merits.

### D. Whether Payment Needed to Be Received by June 27, 2011 to Avoid Lapse of the Policy.

In her motion, Plaintiff contends that Defendant extended the 31 day grace period provided under her insurance policy to 45 days.  Plaintiff's Motion at 2.  Plaintiff argues that it was Defendant's routine practice to extend the grace period to 45 days and that, accordingly, her policy did not lapse.  Id. at 2-3.  By arguing that her policy had not lapsed or that Defendant is estopped from claiming that the policy lapsed, Plaintiff misstates the issue.  The insurance policy provides a 31 day grace period.  Insurance Policy [DE 1-2] at 25.  During the grace period, coverage remains in effect.  Id.  If the premium is not paid within the grace period, however, coverage under the policy terminates.  Id.  The policy states that coverage "automatically stop[s]" at the end of the grace period if the required premium is not paid when due.  Id. at 28.  Thus, as Defendant points out, under the plain language of the policy, coverage automatically lapsed at the expiration of the 31 day grace period, i.e. on June 13, 2011.[5]  Defendant's Response at 1; Defendant's Facts ¶ 10.   While Defendant's representative Ann Laurent did state during the June 14, 2011 call that the policy had yet to lapse, she made equally clear that the grace period had been extended as a "courtesy."  Plaintiff's Facts ¶ 3.  She also indicated that to avoid termination of coverage, "we would need the premium in our

---

[5]  Plaintiff does not claim that payment was submitted before the expiration of the 31 day grace period.

9

office no later than the 27th of June." Id.  In Reddick v. Globe Life & Accident Insurance Co., 596 So. 2d 435 (Fla. 1992), the Florida Supreme Court observed that "[t]he granting of an extension of time for premium payments is entirely discretionary with the insurer, and the insurer may impose such conditions as it sees fit."  596 So. 2d at 437.  Thus, Defendant had the right to require that payment be received by no later than June 27, 2011, in order to prevent the policy's lapse.

Unlike Reddick, however, the issue here is whether the premium payment was received by the June 27, 2011 deadline, in accordance with the terms of the grace period extension, not whether Plaintiff's policy remained in effect during the extended grace period.  Thus, the language Plaintiff cites from Reddick regarding waiver and estoppel is simply inapplicable to the facts of this case.  See Plaintiff's Motion at 3.[6]  In any event, Defendant's cross motion for summary judgment is not predicated on the fact

---

[6] The precise language reads: "any course of conduct by an insurance company which leads the insured to believe that an extension has been granted for payment of a premium and that in the meantime the policy will not be forfeited is a waiver of contrary provisions in the contract and the insurer is estopped to urge them." Reddick, 596 So. 2d at 437.  The other cases Plaintiff cites for this proposition are also inapplicable to the facts of this case.  In Bergdorf v. Allstate Insurance Co., 541 So. 2d 716 (Fla Dist. Ct. App. 1989), for example, the court held that the insurance company was estopped from asserting a lapse in the policy because there was a uniform course of dealing between the parties where the insurance company accepted late payment from the insured.  Id. at 717.  In Callaway v. Southern Life & Health Insurance Co., 541 So. 2d 786 (Fla. Ct. App. 1989), the court held that the insurance company was estopped from denying coverage under a life insurance policy where it had told the insured that immediate payment was necessary to prevent lapse of policy and immediate payment was actually tendered.  Id. at 787.  Finally, in Shaw v. Massachusetts Life Insurance Co., 298 So.2d 183 (Fla. Dist. Ct. App. 1974), the court merely held that the question of whether an insurance company was barred by estoppel or waiver from claiming that a policy had lapsed should have gone to the jury.  Id. at 185.

that Plaintiff's coverage lapsed on June 13, 2011.  Instead, as Defendant correctly notes "[t]his dispute with Caruso centers on whether her insurance coverage can continue on its original terms if Caruso's payment was not received by June 27, 2011."  See Defendant's Response at 4.

Plaintiff's argument that the payment did not actually need to be received by June 27, 2011, to avoid lapse of the policy is similarly unavailing.  For example, Plaintiff cites no binding case law that the mail box rule applies to this case.  See Plaintiff's Motion at 6.  Furthermore, as Defendant points out, the grace period extension offer required receipt of the premium payment by no later than June 27, 2011.  See Defendant's Response at 11-12.  Thus, under the terms of the extension offer, the mail box rule is inapplicable to the facts of this case.  See Reddick, 596 So. 2d at 437 (observing that insurer may impose conditions on extensions of time to make premium payments).

Given that Defendant was entitled to impose conditions when it granted Plaintiff an extension of the grace period, Plaintiff cannot rely on previous requests Defendant made which only requested remittance of payment.  See Plaintiff's Motion at 6-8.  For instance, Plaintiff relies on the fact that the final, undated premium notice stated that payment only needed to be remitted.  See id. at 7.  Plaintiff, however, has failed to cite any evidence regarding when Rakusin received this final premium notice.  By contrast, Defendant has provided evidence that the final premium notice was mailed on June 1, 2011.[7]  See Defendant's Facts ¶ 7.  Plaintiff argues that the testimony of Carrie Colton,

---

[7] Plaintiff cites no evidence for the fact that she was never provided with a copy of the policy.  See Plaintiff's Facts ¶ 3.  Accordingly, the Court will not credit this assertion.

11

Defendant's Consumer Affairs Manager, that this letter was mailed on June 1, 2011, is based upon hearsay because it included information from Defendant's electronic file which was never introduced into evidence. See Plaintiff's Response Facts ¶ 7. Because Ms. Colton's testimony was based upon her review of Defendant's business records, it appears that this testimony could be made admissible at trial. See Jones v. UPS Ground Freight, 683 F.3d 1283, 1293-94 (11th Cir. 2012) (noting that a district court can consider hearsay in ruling on a motion for summary judgment only "if the statement could be reduced to admissible evidence at trial or reduced to admissible form"). Thus, the fact that the premium notice was mailed on June 1, 2011 is uncontroverted for the purposes of summary judgment. By the terms of the policy, "[w]ritten notice to the policyholder or the primary insured will be deemed to be effective on the date it is placed in the United States Mail, postage prepaid and properly addressed to the primary location of the policyholder or the primary insured." Insurance Policy [DE 1-2] at 25. Thus, this ten day window had expired prior to the June 14, 2011 telephone call. Moreover, Plaintiff herself received a letter dated June 1, 2011, advising her that the premium had to be paid before the expiration of the grace period. Defendant's Facts ¶ 8. Because the 31 day grace period expired before Rakusin made any attempt to remit payment in accordance with the final premium notice, the terms of the extra contractual grace period apply. Accordingly, to avoid lapse of coverage, Defendant needed to receive payment from Plaintiff (or her designated Payor) on or before June 27, 2011.

The Court also rejects Plaintiff's argument that the "need the payment in our office" language from the June 14, 2011 call was ambiguous. See Plaintiff's Motion at 9.

12

This instruction clearly indicated that Defendant must receive payment on or before June 27, 2011.  As Defendant points out, the word "receive" is not ambiguous and should be given its ordinary meaning.  Defendant's Response at 13.  Moreover, Defendant does not contend that the payment was not timely received because it was mailed to a post office box rather than Defendant's home office and Plaintiff has put forward no evidence that she was confused about where to mail the payment.  See id. at 5-6.  Thus, the issue of where the payment was actually sent is irrelevant to resolving the Motions for Summary Judgment.

Finally, Defendant was not required to tell Rakusin's staff that the premium payment could be made by credit card.   See Plaintiff's Motion at 4.  There is no evidence before the Court that anyone ever asked if the premium payment could be made by credit card.  See Plaintiff's Facts ¶ 18.  Thus, this cannot serve as a basis for granting summary judgment for the Plaintiff.

### E. Whether Payment was Received by June 27, 2011 in Accordance With the Terms of the Grace Period Extension.

Based on the Court's finding that in order to avoid termination of her policy, Defendant needed to receive Plaintiff's premium payment on or before June 27, 2011, the sole issue remaining before the Court relevant to resolution of the Motions for Summary Judgment is whether payment was in fact received on or before June 27, 2011.  Defendant, relying on testimony from Steven Williamson regarding the routine business practices of its payment processor, Fifth Third Bank, contends that the Rakusin check did not arrive until June 29, 2011.  Defendant's Motion at 14.  During June 2011, Fifth Third Bank had mail picked up from the Cincinnati lock box seven times a day and

brought to its facility for processing. Id. at 15;[8] Defendant's Facts ¶ 21. The Rakusin check received a spray date of "6/29." Defendant's Motion at 15; Defendant's Facts ¶ 31. According to Defendant, it would be impossible for a check actually received on June 27, 2011, to receive a spray date of "6/29." Defendant's Motion at 19; Defendant's Facts ¶ 33. If the check was received by 1:00 a.m., 4:00 a.m., 5:00 a.m., or 7:00 a.m. on Monday, June 27, 2011, the check would have received a spray date of "6/27." Defendant's Motion at 19; Defendant's Facts ¶ 28. If the check was received by 7:00 p.m., 9:00 p.m., or 11:00 p.m. on June 27, 2011, the check would have received a spray date of "6/28." Defendant's Motion at 19; Defendant's Facts ¶ 27. Because the check actually received a spray date of "6/29," Defendant contends that it would have been impossible for the check to have been received on June 27, 2011, or earlier. Defendant's Motion at 20; Defendant's Facts ¶ 33.

Plaintiff counters the testimony of Mr. Williamson with affidavits demonstrating that, according to the Rakusin Law Firm's practices, the check should have been mailed the same day it was written–June 23, 2011. Plaintiff's Facts ¶ 19. Plaintiff has also requested that the Court take judicial notice of the fact that first class mail delivery between Fort Lauderdale and Cincinnati–the location of the lockbox–is typically three

---

[8] Plaintiff moved to strike the paragraphs contained on page 15, as well as the corresponding paragraphs of Defendant's statement of material facts. See DE 51. The Court finds the motion to strike frivolous. Stephen Williamson was designated as the corporate representative of Fifth Third Bank. Accordingly, he was entitled to testify regarding Fifth Third Bank's routine business practices. The distinction Plaintiff attempts to draw between Fifth Third Bank picking the mail up directly and having a courier pick up the mail is without merit. It is still part of Fifth Third Bank's routine business practice to have the mail picked up regardless of whether an agent handles the actual pick up. Further, Mr. Williamson was clearly qualified to testify regarding the instructions it gave its agent.

days.  Plaintiff has also pointed out that the actual envelope with the postmark was destroyed when Third Bank processed the payment.  Plaintiff's Facts ¶ 29.  The Court finds that the evidence adduced by both parties creates a disputed issue of material fact as to when the payment was received.  Accordingly, the Court will deny both Motions for Summary Judgment.  This case will proceed to trial on the narrow issue of whether payment was received on or before June 27, 2011, and Plaintiff's damages, if applicable.[9]

### III.  CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Marlene Caruso's Request for Judicial Notice in Support of Marlene Caruso's Motion for Partial Summary Judgment [DE 45] is **GRANTED**;

2. Defendant Golden Rule Insurance Company's Motion for Summary Judgment [DE 42] is **DENIED**;

3. Plaintiff Marlene Caruso's Motion for Partial Summary Judgment [DE 43] is **DENIED**;

4. Plaintiff's Motion to Strike Incompetent Testimony (Lack of Personal Knowledge, Speculation, and Conjecture) in Defendant's Motion for Summary Judgment [DE 51] is **DENIED**; and

5. Plaintiff's Motion to Strike Incompetent Testimony (Hearsay, Lack of Personal Knowledge, Speculation, and Conjecture and Facts Not in the Record) in Defendant's Response to Caruso's Statement of Undisputed Material Facts [DE

---

[9] The issue of Plaintiff's entitlement to attorneys fees and costs will be determined by the Court, post-trial, if Plaintiff prevails.

63] is **DENIED** as **MOOT**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 11th day of October, 2013.

_____
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.